HARVEY *v.* LEWIS.

CLAIM OF ISRAEL.

CORPORATIONS—RIGHTS TO STOCK—CONDITIONS—ASSIGNMENTS—FIND-
INGS OF COURT—RECORD.

> Finding of trial judge that plaintiff assignee of rights to stock
> which assignors held contingent upon the fulfillment of certain
> conditions which were never fulfilled, thereby rendering the
> rights worthless and that the assignment thereof was an idle
> ceremony *held,* supported by the record.

EDWARDS and SOURIS, JJ., dissenting.
BLACK, J., for dismissal of appeal.

Appeal from Wayne; Rashid (Joseph G.), J.
Submitted June 8, 1961. (Docket No. 25, Calendar
No. 48,729.) Decided December 1, 1961.

Bill by Sidney M. Harvey, Thermie Henkle, Wil-
liam T. McAlonan, Emma Moist, and others against
Daniel L. Lewis, *et al.,* doing business as Lewis
Bros., Brookdale Cemetery Association, Brookdale,
Inc., Mt. Sinai Memorial Cemetery Association, and
others, for accounting, receivership proceedings,
quieting of title, cancellation of encumbrances, im-
pressment of trust, and for other relief in connection
with corporate organization and sales of property
for cemetery purposes.

Claim of Muriel Israel for ownership of corporate
stock denied. Claimant Israel appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
13 Am Jur, Corporations § 329 *et seq.*

*Walter M. Nelson* (*Burger & Sullivan* and *Frank Iannelli*, of counsel for Harvey and McAlonan, *Clarence T. Wilson*, of counsel for Henkle, Moist, and others), for plaintiffs.

*Irwin I. Cohn* (*John Sklar*, of counsel), for claimant Israel.

*Stanley E. Beattie*, for John R. Starrs, receiver.

KELLY, J. The files in this Court and in the Wayne circuit court disclose the repeated and unusual litigation during the more than 20 years that have elapsed since the incorporation of the Brookdale Cemetery Association and the Brookdale Sales Company.

Appellants state:

"Underlying facts and background have, in part, heretofore been before this Court in *Harvey* v. *Lewis*, 357 Mich 305, as well as in other appeals in this case which were disposed of on motions without published opinions."[*]

April 8, 1958, Muriel Israel filed her claim to the ownership of 38,180 shares of common stock of Brookdale, Inc., as assignee of Dr. Philip A. Callahan and Rev. E. J. Rollings.

The rights and interests of Dr. Callahan and Rev. Rollings had been presented to Hon. John V. Brennan, Wayne county circuit judge, who, after an extensive hearing, made a determination and on February 29, 1956, filed an opinion in which he stated:

"Brookdale Sales Company ceased to exist on April 29, 1939. Elmer J. Rollings and Philip A. Callahan's contract with Brookdale, and under which each was assigned 19,090 shares of stock in Brookdale, Inc., was contingent upon the fulfillment of cer-

---

[*] Also, for various proceedings, see 363 Mich 232.—REPORTER.

tain conditions. These conditions were not fulfilled. No breach of contract was, or is involved. The court is therefore of opinion and so finds, that whatever rights, if any they had, were extinguished by reason of the terms of the agreement itself. No rights or obligations whatsoever survived to them, or either of them, or to any third person or persons claiming under or through them or either of them. The stock assigned to them, or either of them, became worthless, both to themselves and to third persons claiming under or through them or either of them. Their assignment of said stock on July 24, 1953, or at any other time, was an idle ceremony."

Judge Brennan's term of office expired without entry of decree. Without reopening or taking further proof, Judge Rashid, as successor judge to Judge Brennan, agreed with Judge Brennan's opinion and entered an order denying Muriel Israel's claim, which has resulted in this appeal.

We agree that the record sustains Judge Brennan's opinion. Judge Rashid's order is in accordance therewith and is affirmed. Costs to appellees.

DETHMERS, C. J., and CARR and KAVANAGH, JJ., concurred with KELLY, J.

SOURIS, J. (*dissenting*). Presented for our review are a chancellor's findings of fact. Occasionally, too frequently some of us say, we are called upon to exercise our powers of appellate review in cases presenting factually unique circumstances such that decision must be based solely upon analysis of the testimonial record and no principles of law of interest to the bench or bar need be discussed. We have here such a case.

This is only the fourth appeal in this case which has reached appellate finality. For those prior see *Harvey* v. *Lewis,* 357 Mich 305, 364 Mich 491, 493.

Others may follow. *Harvey* v. *Lewis,* 363 Mich 232. Involved are the affairs of Brookdale Cemetery in Wayne county. During the course of the chancery proceedings below a receiver was appointed for Brookdale, Inc., a corporation which holds all, or substantially all, of the capital stock of Brookdale Cemetery Association. The association, in turn, holds title to the cemetery lands.

Extensive proofs were taken over a 3-month period in 1955 before Wayne Circuit Judge John V. Brennan. Included were proofs relating to various disputed claims of ownership of the capital stock of Brookdale, Inc. These claims became an issue in the litigation upon the receiver's attempt to establish a current stock register for the corporation in the event distribution of assets to stockholders became necessary. Judge Brennan, in 1956, filed a lengthy opinion in which he found against the claim of Muriel Israel, appellant, that she owned 38,180 shares of Brookdale's common capital stock. Judge Brennan retired at the end of 1956 before entering an order or decree. His successor, Wayne Circuit Judge Joseph G. Rashid, subsequently entered an order finally disposing of Mrs. Israel's claim based solely upon Judge Brennan's opinion, without taking additional proofs and without independent review of the proofs already taken.

The receiver of the corporation disclaims any interest in this appeal. He contends that the dispute is between plaintiffs, who own some capital stock of Brookdale, Inc., and appellant, whose claim to stock ownership they dispute for purposes of establishing a stock register in this receivership proceeding. Appellant's claim is derived by purchase from Dr. Philip A. Callahan and Rev. Elmer J. Rollings. Consequently, it became necessary for the chancellor to determine whether Dr. Callahan and Rev. Rollings ever became entitled to the 38,180 shares of common

stock here involved. The chancellor found as a fact that Callahan and Rollings entered into an agreement with the corporation whereby, in exchange for their services for a period of 1 year, the corporation would compensate them by issuing to each 19,090 shares of its common stock. He also found as a fact that they failed to perform their obligation to render services and that, consequently, they never became entitled to the issuance by the corporation of the common stock. The result of these findings, of course, is that plaintiffs' and other stockholders' equity in Brookdale, Inc., is enhanced to the extent that the number of issued and outstanding common stock of the corporation is thereby 38,180 shares fewer than otherwise would be the case. We note in passing that to the extent the corporation's issued and outstanding capital stock is reduced, there is a corresponding effect upon the corporation's capital structure, a matter which properly might be of concern to the receiver.

Appellant claims the chancellor erred in 3 respects: (1) Callahan and Rollings did not make their agreement with the corporation, but made it instead with its principal stockholders, (2) Callahan and Rollings fully performed the services for which they were to be compensated, and (3) their compensation in stock was to come from the shares of the principal stockholders and not from the corporation. From our review *de novo,* we conclude that the evidence produced supports appellant's claim with overwhelming certainty.

The only support for the chancellor's finding that Callahan and Rollings made their agreement with the corporation is found in identical letters Rollings sent to the secretary and to the attorney for the corporation in which he demanded "the stock due Philip A. Callahan and myself as per our agreement with the above companies." In view of the overwhelming

evidence that their agreement was with the principal stockholders rather than with the corporation itself, we are inclined to accept appellant's counsel's statement at oral argument on appeal that Rollings' characterization of the transaction was the result of a layman's inadvertence.

The agreement was in writing, but there is no longer any complete copy of it available. The only portion of the agreement available in written form is contained in a letter dated April 29, 1939, to Rev. Rollings from Henry M. Rottman, an attorney for Mildred Lewis, Reuben A. Stahl, and Susan L. Pearlstein, assignee of Archie L. Waters, the principal stockholders who were the other parties to the contract. In this letter Mr. Rottman, in behalf of his clients, claimed that Dr. Callahan and Rev. Rollings had failed to carry out the terms of their agreement and demanded assignment and transfer of all of their shares of Brookdale, Inc., stock to his clients. The letter quotes provision 5 of the agreement as follows:

"It is expressly agreed and understood that the stock allotted to Philip A. Callahan and E. J. Rollings is upon the express consideration of their active and constant participation in the affairs of Brookdale Incorporated, and for their efforts to promote the successful operation of such corporation. If during the first year from the date hereof, they fail to actively participate in, and promote the interests of the corporation, they will forthwith assign their stock to the remaining parties to this agreement in equal shares."

Neither Callahan nor Rollings ever assigned or otherwise transferred any stock to Mr. Rottman's clients.

Dr. Callahan, Rev. Rollings, Harris Wienner, as attorney, and Stahl, were all called to testify as witnesses for the plaintiffs. From plaintiffs' own witnesses, as well as from Mr. Rottman's letter, it was

established beyond any doubt that the agreement was with the Waters-Stahl group. It was also established beyond doubt that 140,250 shares of Brookdale's common stock were issued to Stahl as trustee for the Waters-Stahl group. This stock was issued in exchange for capital stock of the cemetery association which, in turn, had been issued in exchange for the land to be used as a cemetery. In this appeal no challenge is made to the legality of the issuance of these 140,250 shares to Stahl. It was also established beyond doubt that after issuance of the certificate to Stahl for 140,250 shares, that certificate was surrendered and new certificates issued in varying amounts in the names of a number of people, including certificates for 19,090 shares each for Callahan and Rollings. Attorney Wienner's testimony covers the point:

*"Cross Examination by Mr. Sklar:*

"*Q.* Mr. Wienner, I would like to clarify, if I may, the sequence of events with respect to the formation of the 2 Brookdale corporations, and I am referring to Brookdale Cemetery Association and Brookdale, Inc., and the issuance of stock. I believe you testified previously on examination by Mr. Nelson that upon the formation of Brookdale Cemetery Association a block of stock was issued to Mr. Stahl?

"*A.* That is right; 1,410 shares.

"*Q.* And the consideration for the issuance of that stock was what?

"*A.* A conveyance by Stahl to Brookdale Cemetery Association of the 140 or 132 acres.   *   *   *

"*Q.* What was done with the shares of stock issued by Brookdale Cemetry Association, the 1,410 shares of stock that you have just referred to?

"*A.* That was issued to Reuben Stahl?

"*Q.* Yes.

"*A.* That was assigned to Brookdale, Inc.

"*Q.* What did Brookdale, Inc., then do with respect to the issuance of stock?

"*A.* They issued common stock to Mr. Stahl—I think it was 140,250 shares—which was surrendered to Brookdale, Inc., by Mr. Stahl, and certificates, on the direction of Stahl, were issued; 19,090 shares.  *  *  *

"*Q.* You say 140,250 shares of common stock of Brookdale, Inc., were issued to Mr. Stahl?

"*A.* That is right; as trustee.

"*Q.* Upon his assignment to Brookdale, Inc., of the 1,410 shares that he received from Brookdale Cemetery Association?

"*A.* That is right.  *  *  *

"*Q.* At the time of the formation of Brookdale, Inc., do you know what was done with the certificate for the 140,250 shares?

"*A.* Yes.

"*Q.* Of the common stock of Brookdale, Inc.?

"*A.* That is right.

"*Q.* That, you say, had been issued to Mr. Stahl?

"*A.* That is right.

"*Q.* As trustee?  *  *  *

"*Q.* Now, what was done with that certificate?  *  *  *

"*The Witness:* The certificate was assigned by Reuben Stahl as trustee back again to Brookdale, Inc., at [with?] the request that the stock be broken up into a certain number of shares to different individuals.

"*The Court:* Do you know that of your own knowledge?

"*The Witness:* I do know of my own knowledge. I was the one that drafted it.  *  *  *

"*Q.* You testified you personally prepared these certificates?

"*A.* That is right.  *  *  *

"*Q.* Can you state at this time which of those certificates are now in existence?

"*A.* There are 2 exhibits in this court; one certificate for 19,090 made out to Rollings, to which the stub is attached, and there is another certificate made out to Dr. Callahan for 19,090 and the stub is at-

tached.  There is another certificate made out to Reuben Stahl for 19,090 shares, which is also an exhibit in this case, and, as I understand it, assigned to Daniel Lewis.

"*Q.* Do you know of any other certificates that were issued?

"*A.* Why, yes.  There was a certificate to Waters that was issued, that had been assigned to Mrs. Pearlstein under this agreement which has also been testified to in court.

"*Q.* Any others?

"*A.* There is one more which was made out to George Lewis or Mildred Lewis; I don't remember which.  But that is 19,090 shares.

"*Q.* Was there any other?  *  *  *

"*The Witness:* There were 2 certificates issued to Porikos; one for—and it is also an exhibit right here in court.  One was for 31,600 and some odd shares.  I have got it here.  One certificate to Adam Porikos for 31,875 and another certificate dated a year later, or April 29, 1939, for 5,625 shares of common stock.  *  *  *

"*Q.* As I understand it, all these certificates to which you just testified were certificates issued out of the stock Brookdale, Inc., originally issued to Mr. Stahl?

"*A.* Of the 140,250 shares.

"*Q.* When you refer to Mr. Stahl as trustee, for whom was he trustee at that time?

"*A.* For all these groups.  *  *  *

"*Q.* I believe you testified, Mr. Wienner, that in the distribution of this 140,250 shares Mr. Stahl was acting as trustee.  Do I understand from your testimony that he was acting as trustee for the persons for whom he distributed that stock?

"*A.* That is right."

The stock certificates for Callahan and Rollings were kept in Mr. Wienner's possession and never were delivered to them.  It was for that reason Rollings wrote to Wienner as attorney and "escrow

agent" demanding immediate delivery of the stock at the end of 1 year, after Callahan and Rollings were told to "get out" of the corporation's affairs by their former associates. The disaffection occurred, significantly enough, at the time when otherwise they would be entitled to receive their promised stock in fulfillment of the contractual provisions. As far as this record is concerned, the only testimony concerning the efforts expended by Callahan and Rollings in behalf of the venture during its first year in operation is that they did, indeed, use their best efforts to sell cemetery lots, Dr. Callahan working through social organizations in many of which he had contacts, and Rev. Rollings working through church groups in the community. The only suggestion to the contrary appears in an instrument introduced as an exhibit by which, apparently, Stahl attempted in 1940 to assign his reversionary interest in the shares of stock allocated to Callahan and Rollings to another member of the Waters-Stahl group. This instrument, whatever else it does, confirms our conclusion that the chancellor erred in his belief that Callahan and Rollings dealt directly with the corporation. The pertinent paragraph of the instrument reads as follows:

"The undersigned who is assigning all his stock interest in Brookdale, Incorporated, by the transfer of certificate of stock No. Nine for 19,090 shares hereby represents that the 140,250 shares non par which was subscribed by him as trustee was originally contemplated that 95,450 shares were to be divided between the undersigned, Archie L. Waters and George Lewis. That by agreement of the parties these shares were divided between the above named 3 and E. J. Rollings and Philip A. Callahan upon the express agreement and understanding that both E. J. Rollings and Philip A. Callahan were to be entitled to their shares of stock only for their efforts to promote the successful operation of such corpora-

tion and for their active and constant participation in the affairs of Brookdale Incorporated. If they failed during first year to do so the stock of said E. J. Rollings and Philip A. Callahan, either or both of them, was to be assigned to the other 3 or their assigns or successors in equal shares, and to the best of the undersigned knowledge E. J. Rollings & Philip A. Callahan did not carry out their undertakings as hereinbefore set forth whether written or oral."

Plaintiffs rely upon the last sentence quoted, which was interlineated by handwriting, in support of their claim that Callahan and Rollings never became entitled to the disputed stock. Whatever probative value the exhibit might otherwise have had, it was substantially rendered valueless for such purpose by Mr. Stahl's own testimony at the hearing. At one point, on cross examination, he testified that he could not say how active Callahan and Rollings were in the affairs of Brookdale because he "wasn't that close to them, but  *  *  *  they came in and tried to make sales." Finally, at another point, Stahl testified that he had no personal knowledge whether Callahan and Rollings performed all of the services that were expected of them in accordance with the contract.

We note in closing this opinion that plaintiffs make no claim of their own to the 38,180 shares of stock, nor is there any basis for such claim. Their objections were made to keep these shares of stock out of the stock register sought to be made by the receiver. It is our conclusion that the proofs fail to support the chancellor's order and that the stock register of the corporation should record transfer of 19,090 shares of the corporation's common capital stock from Stahl to Callahan and to Rollings and by each of them, in turn, to Muriel Israel.

The order should be reversed. Costs to appellant.

EDWARDS, J., concurred with SOURIS, J.

BLACK, J. (*for dismissal of appeal*). The present appeal, claimed as of right, should be dismissed. For reasons see my separate opinion of *Harvey* v. *Lewis (Claim of McKenney, Guardian)* (Cal No. 48,732), 365 Mich 159, 160.

OTIS M. SMITH, J., took no part in the decision of this case.